UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SAULSBURY INDUSTRIES, INC.,

                              Plaintiff,

v.                                                          1:19-CV-0771
                                                            (GTS/TWD)
THE BABCOCK & WILCOX COMPANY,

                              Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

DINSMORE & SHOHL LLP                            GLEN R. McMURRY, ESQ.
   Counsel for Plaintiff                        SUNNI R. HARRIS, ESQ.
Fifth Third Center
1 S. Main St., Suite 1300
Dayton, OH 45402

BOND SCHOENECK & KING, PLLC                     BRIAN J. BUTLER, ESQ.
   Counsel for Defendant
One Lincoln Center
Syracuse, NY 13202

ROETZEL & ANDRESS, LPA                          JESSICA A. LOPEZ, ESQ.
   Co-Counsel for Defendant                     RONALD S. KOPP, ESQ.
222 S. Main St., Suite 400
Akron, OH 44308

GLENN T. SUDDABY, Chief United States District Judge

**DECISION and ORDER**

        Currently pending before the Court, in this breach-of-contract action filed by Saulsbury

Industries ("Plaintiff") against the Babcock & Wilcox Company ("Defendant"), are Plaintiff's

motion to strike Defendant's first affirmative defense (demanding a set-off) pursuant to Fed. R.

Civ. P. 12(f), and Plaintiff's motion to dismiss Defendant's first-amended counterclaim

(containing counts for a set-off and breach of contract) pursuant to Fed. R. Civ. P. 12(b)(6).

(Dkt. No. 33-1; Dkt. No. 43.)  For the reasons set forth below, Plaintiff's motion to strike Defendant's affirmative defense of set-off is granted, Plaintiff's motion to dismiss Defendant's counterclaim is denied with regard to both the count of set-off and the count of breach of contract.

## I.     RELEVANT BACKGROUND

### A.     Summary of Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint alleges as follows.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

On September 1, 2015, Defendant entered into a Consortium Framework Agreement ("Consortium Agreement") with various entities, including Plaintiff, to work cooperatively to obtain business from potential construction customers.  (*Id*.)  The Consortium Agreement prohibited, among other things, a consortium member from withholding or setting off any payment that was due to another consortium member unless the dispute was resolved by agreement of the parties or finally disposed of by a court.  (*Id*.)  On November 2, 2015, Plaintiff and Defendant (and other consortium members) entered into an Engineering, Procurement and Construction Contract ("EPC Contract") with Continental Carbon Company ("CCC").  (*Id*.)  Pursuant to the EPC Contract, CCC retained ten percent (10%) of each "Milestone Payment" as "Retainage," agreeing to pay that Retainage as part of the final Milestone Payment.  (*Id*.)  In January of 2019, CCC paid Defendant (as the "Consortium Leader") the Retainage, after deciding to postpone the parties' work on its facility in Phenix City, Alabama ("Phenix project").  (*Id*.)  Of that amount, Plaintiff was entitled to $3,233,543.63.  (*Id*.)  However, Defendant paid Plaintiff only $785,000.00, wrongfully demanding (and finding to be inadequate) invoices to substantiate the remaining amount.  (*Id*.)

2

Based on these factual allegations, Plaintiff asserts four claims against Defendant: (1) a claim for breach of contract; (2) a claim for promissory estoppel; (3) a claim for unjust enrichment; and (4) a claim for fraud.  (*Id*.)  Familiarity with the factual allegations supporting these claims in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*Id*.)

B.      **Summary of Defendant's Original Answer**

Generally, Defendant's Answer denies a variety of Plaintiff's allegations and asserts two affirmative defenses: (1) that, should Defendant be determined to be liable to Plaintiff for any amount of money, that amount must be set-off by Plaintiff's obligation to repay Defendant (given that CCC's termination triggered various provisions of the parties' contracts, which prohibited Plaintiff from retaining payments for work it never performed and for materials it never purchased); and (2) that Plaintiff is estopped from pursuing its claims against Defendant. (*See generally* Dkt. No. 22.)  Defendant also asserts a counterclaim against Plaintiff, requesting that the Court enter a Declaratory Judgement against Plaintiff in accordance with 28 U.S.C. § 2001, determining that, as between the parties, no additional monies are owed by Defendant to Plaintiff.  (*Id.*)

C.      **Plaintiff's First Motion**

Generally, in support of its first motion,[1] Plaintiff argues as follows: (1) the Court should strike Defendant's first affirmative defense of set-off pursuant to Fed. R. Civ. P. 12(f), because it is insufficient in that it directly conflicts with Articles 9.5 and 9.6 of the Consortium Agreement, which specifically prohibit set-offs without agreement of the parties or court disposition; and (2) the Court should dismiss Defendant's counterclaim for declaratory judgment from its original

---

[1]      Plaintiff is respectfully reminded that, pursuant to the Court's Local Rules of Practice, memoranda of law must contain a table of contents.  N.D.N.Y L.R. 7.1(a)(1).

Answer pursuant to Fed. R. Civ. P. 12(b)(6), because a declaratory judgment is a remedy, not an independent cause of action.  (Dkt. No. 33-1 [Plf.'s First Memo. of Law].)

### D.   Summary of Defendant's Amended Answer

Twenty-one days after service of Plaintiff's motion, Defendant filed an Amended Answer as a matter of right under Fed. R. Civ. P. 15(a)(1)(A).  (Dkt. No. 38.)  Generally, Defendant's Amended Answer restates its denial of various of Plaintiff's allegations and its assertion of the affirmative defenses of set-off and estoppel.  (*See generally id.*)  In addition, Defendant's Amended Answer abandons its counterclaim for declaratory judgment and replaces it with two counterclaims: (1) a counterclaim for set-off arising from Plaintiff's breach of its contractual obligation to not retain payment in the amount of $2,154,216.38 for work that it never performed and materials that it never purchased, and (2) a counterclaim for breach of contract arising from Plaintiff's commitments under Article 5.9 of the Consortium Agreement (which provides, in pertinent part, that, should the EPC Contract be terminated prior to completion of performance, any payment by the customer would "be divided between the [Consortium] Members pro-rata to the costs, expenses, and obligations actually and reasonably incurred by each of them in the performance of its SCOPE OF WORK and recognized in arriving at the settlement with the CUSTOMER") and Section 16.2 of the EPC Contract (which provides, in pertinent part, that, should CCC terminate the contract without cause, the Consortium Members are entitled to compensation "only for the work performed up to and including the date of termination").  (*Id.*)

### E.      Summary of the Remainder of the Parties' Briefing on Plaintiff's First Motion

Generally, in response to Plaintiff's first motion, Defendant argues as follows: (1) Plaintiff's motion to strike Defendant's first affirmative defense should be denied because Ohio law clearly recognizes set-off as an affirmative defense and Defendant's affirmative defense of set-off is expressly contemplated by Articles 9.5 and 9.6. of the Consortium Agreement (which permit courts located in New York State to dispose of disputes regarding set-offs); and (2) Plaintiff's motion to dismiss has been rendered moot by Defendant's filing of its First Amended Counterclaim and, in the alternative, Plaintiff's motion to dismiss must be denied because Defendant appropriately utilized the Declaratory Judgment Act defensively to establish its non-liability and to clarify uncertainties surrounding the interpretation of the Consortium Agreement. (Dkt. No. 39 [Def.'s First Opp'n Memo. of Law].)

Generally, in reply to Defendant's response to its first motion, Plaintiff argues as follows: (1) Plaintiff concedes that its motion to dismiss Defendant's declaratory judgment counterclaim was mooted by Defendant's filing of its First Amended Counterclaim, (2) contrary to Defendant's argument, its affirmative defense of set-off is incompatible with the plain language of Articles 9.5 and 9.6 of the Consortium Agreement, which permit an affirmative defense of set-off only after a court in New York State resolves the dispute regarding that set-off, and (3) Defendant's affirmative defense of set-off is also incompatible with Ohio law, which defines a set-off as a right arising from a contract independent of the contract sued upon (and here Defendant's affirmative defense of set-off arises from the same contract as the contract sued upon, i.e., the Consortium Agreement). (Dkt. No. 40 [Plf.'s First Reply Memo. of Law].)

F.       **Summary of Parties' Briefing on Plaintiff's Second Motion**

Generally, in support of its second motion (submitted to challenge the new two-part counterclaim in Defendant's Amended Answer), Plaintiff argues as follows: (1) Defendant's counterclaim of set-off should be dismissed because it is incompatible with the plain language of Articles 9.5 and 9.6 of the Consortium Agreement, which permit an affirmative defense of set-off only after a court in New York State has resolved the Consortium Members' dispute regarding that set-off; (2) Defendant's counterclaim of set-off should be dismissed also because it is incompatible with Ohio law, which defines a set-off as a right arising from a contract independent of the contract sued upon (and here Defendant's affirmative defense of set-off arises from the same contract as the contract sued upon, i.e., the Consortium Agreement); (3) Defendant's counterclaim of breach of contract should be dismissed to the extent it is based on Plaintiff's alleged breach of Article 5.9 of the Consortium Agreement (which regards the division of payments pro-rata to work performed), because that article is not implicated under the facts alleged in the Amended Answer, Paragraph 12 of which acknowledges that the payments in question from CCC to Defendant were for Retainage; and (4) Defendant's counterclaim of breach of contract should be dismissed to the extent it is based on Plaintiff's alleged breach of Section 16.2 of the EPC Contract (which regards compensation for work performed), because there are no binding obligations between Plaintiff and Defendant in the EPC Contract (which was entered into between CCC on the one hand and Plaintiff and Defendant on the other hand).  (*See generally* Dkt. No. 43-1 [Plf.'s Second Memo. of Law].)

Generally, in response to Plaintiff's second motion, Defendant argues as follows: (1) Defendant's counterclaim of set-off is compatible with Articles 9.5 and 9.6 of the Consortium Agreement because that counterclaim does not actually seek a set-off but merely a declaration

that Defendant owes no further Retainage to Plaintiff (based on Defendant's accounting); (2) Defendant's counterclaim of set-off is compatible with Ohio law, but, if it is not, Defendant requests leave to amend its counterclaim to one of "recoupment" under the same set of facts; (3) Defendant has sufficiently pleaded implication of Article 5.9 of the Consortium Agreement because the payments in question from CCC to Defendant were for not merely Retainage but a portion of the parties' collective shares of the "[T]ermination [S]ettlement" under that article; and (4) Defendant has also sufficiently pleaded implication of Section 16.2 of the EPC Contract because that contract does, in fact, create legal obligations between Plaintiff and Defendant (as acknowledged by Section 19.5 of the EPC Contract).  (*See generally* Dkt. No. 47 [Def.'s Second Opp'n Memo. of Law].)

Generally, in reply to Defendant's response to its second motion, Plaintiff argues as follows: (1) Defendant's counterclaim of set-off is incompatible with Articles 9.5 and 9.6 of the Consortium Agreement, because the counterclaim does indeed seek the setting off or withholding of moneys owed to Plaintiff (a fact acknowledged in Defendant's Amended Answer), and no court in New York State has yet resolved the parties' dispute regarding the claimed set-off; (2) Defendant's counterclaim of set-off is indeed incompatible with Ohio law, and amending that counterclaim to one of recoupment would be futile because any withholding of payment would still be precluded by the Consortium Agreement under the facts alleged; (3) Article 5.9 of the Consortium Agreement is not implicated in Defendant's Amended Answer because the payments in question from CCC to Defendant could not have constituted any portion of the Termination Settlement, given that they were made approximately seven months before termination occurred in August of 2019; and (4) despite Defendant's reliance on Section 19.1 of the EPC Contract, the EPC Contract does not create any contractual rights between Plaintiff and

7

Defendant.  (*See generally* Dkt. No. 48 [Plf.'s Second Reply Memo. of Law].)

## II.   RELEVANT LEGAL STANDARDS

"The standard on a motion to dismiss [a claim] also applies to a motion to dismiss a counterclaim pursuant to [Fed. R. Civ. P.] 12(b)(6) and a motion to strike an affirmative defense pursuant to [Fed. R. Civ. P.] 12(f)."  *Optigen, LLC v. Int'l Genetics, Inc.*, 777 F. Supp. 2d 390, 399 (N.D.N.Y. 2011) (Suddaby, C.J.) (quoting *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 531 F. Supp. 2d 622 [S.D.N.Y 2008]).  It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ.

P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the

pleading must contain at least "some factual allegation[s]." *Id*. at 1965.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense . . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a

dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal

pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the

four corners of the complaint may be considered without triggering the standard governing a

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,

(2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[2]

## III.    ANALYSIS

The Court begins its analysis by recognizing that the dispute between Plaintiff and

Defendant involves a Consortium Agreement, which contains a choice-of-law clause for the law

---

[2]      *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a
pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573,
2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to
dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed.
R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the
complaint or answer, [2] documents incorporated by reference in the complaint (and provided by
the parties), [3] documents that, although not incorporated by reference, are "integral" to the
complaint, or [4] any matter of which the court can take judicial notice for the factual
background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)
(explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may
consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and
documents incorporated by reference in the complaint . . . . Where a document is not
incorporated by reference, the court may neverless consider it where the complaint relies heavily
upon its terms and effect, thereby rendering the document 'integral' to the complaint . . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document. It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.")
[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147,
152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as
an exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or
incorporate by reference a [document] upon which it solely relies and which is integral to the
complaint," the court may nevertheless take the document into consideration in deciding [a]
defendant's motion to dismiss, without converting the proceeding to one for summary
judgment.") (internal quotation marks and citation omitted).

of the state of Ohio. (Dkt. No. 1-1, at ¶ 9.6.1.) The Consortium Agreement's plain language clearly states that "any and all disputes including, but not limited to, disputes in contract . . . shall be governed by the laws of the state of Ohio. (*Id.*) Because Defendant's counterclaim relates to the Consortium Agreement,[3] the Court will apply the laws of the state of Ohio for the purposes of this motion.[4] *One Pub. Co. v. Lehman Bros. Special Fin., Inc.,* 414 F.3d 325, 336 (2d Cir. 2005).

### A. Whether Defendant's Affirmative Defense of Set-Off Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in Plaintiff's memoranda of law. (Dkt. No. 33-1; Dkt. No. 43-1; Dkt. No. 48.) To those reasons, the Court adds the following analysis.

"Setoff, both at law and in equity, is that right that exists between two parties, each of whom under an independent contract owes a definite amount to the other, to set off their respective debts by way of mutual deduction." *Mid Am. Constr., LLC v. Univ. of Akron*, 18AP-846, 2019 WL 4667581, at *18 (Ohio Ct. App. 2019) (citing *Triangle Properties v. Homewood Corp.*, 3 N.E. 3d 241 [Ohio Ct. App. 2013]); *Walter v. Natl. City Bank*, 330 N.E. 2d 425, 427 (Ohio 1975). "[T]he well established rule [is] that a setoff must have been a substituting right at the time it is utilized." *Kocsorak v. Cleveland Trust Co.*, 85 N.E. 2d 96, 100 (Ohio 1949); *see also Frost v. Mihm*, 95-CA-38, 1995 WL 737914, at *2, 4 (Ohio Ct. App. Nov. 15, 1995) (finding that a precondition of a right of setoff is that each party has the right to recover from the other). Courts "can allow setoff on equitable principles where necessary to prevent clear

---

[3]     The EPC Contract (signed by Plaintiff, Defendant, and CCC) contains an arbitration clause in the event a dispute arises between CCC and either Plaintiff or Defendant. (Dkt. No. 1-2, at ? 15.4.) Because Plaintiff and Defendant entered into the EPC Contract as a consortium, the Court looks to the language of the Consortium Agreement to determine which state law to apply in Plaintiff's immediate motion. (Dkt. No. 1-2, at 3.)

[4]     The Court notes that, through their respective briefs, both parties agree to apply the laws of the state of Ohio. (*See generally* Dkt. No. 43-1; Dkt. No. 47.)

injustice." *Mid Am Constr.*, 2019 WL 4667581, at *18.

In the case of contracts, the construction of the writing is a matter of law. *Saunier v. Stark Truss Co., Inc.*, 65 N.E.3d 330, 333 (Ohio Ct. App. 2016). "When parties to a contract dispute the meaning of the contract language, courts must first look to the four corners of the document to determine whether an ambiguity exists." *Bluemile, Inc. v. Atlas Indus. Contractors, Ltd.*, 102 N.E. 3d 579, 583 (Ohio Ct. App. 2017). "Contract language is ambiguous if its meaning cannot be determined from the four corners of the contract or if the contract language is susceptible to two or more conflicting, yet reasonable interpretations." *Bluemile*, 102 N.E. 3d at 584. "If the contract terms are clear and precise, the contract is not ambiguous and must be enforced as written." *Keybank Natl. Assn. v. S.W. Greens of Ohio, LLC*, 988 N.E. 2d 32, 40 (Ohio Ct. App. 2013). "If the terms of the contract are clear and unambiguous, courts must give the words their plain and ordinary meaning and may not create a new contract by finding the parties intended something not set out in the contract." *Saunier*, 65 N.E.3d at 333 (citing *Alexander v. Buckeye Pipe Line*, 374 N.E. 2d 146, 150 [Ohio 1978]). "[T]he court notes that common words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander*, 374 N.E. 2d at 150.

The contractual language pertinent to this aspect of Plaintiff's motion is as follows: "Neither MEMBER shall withhold nor set-off any payment due to the other MEMBER against any claim towards such MEMBER *until* the question of responsibility therefor is resolved by agreement or, failing agreement, the dispute is *finally* disposed of as contemplated by Article 9.6 []." (Dkt. No. 1-1, at 23 [emphasis added].) Additionally, Article 9.6 requires the parties to initiate any legal action stemming from the agreement in New York courts, and states that the

agreement is governed by the laws of the state of Ohio.  (Dkt. No. 1-1, at 24.)

Here, neither party had resolved the question of responsibility by agreement, nor had the dispute been finally disposed of by a court located in the state of New York, before Defendant allegedly withheld a portion of the Retainage that was due from CCC to Plaintiff in January of 2019.  The word "until" is clear and unambiguous.  "The meaning of the word 'until' is not difficult to understand, nor is it some specialized term of art." *Branch v. Smith*, 538 U.S. 254, 298 (2003) (dissent) (citing *Webster's New International Dictionary* 2794 [2d ed. 1957] [defining "until" to mean "[d]uring the whole time before"]; *Webster's Collegiate Dictionary* 1297 [10th ed. 1993] [defining "until" to mean "up to the time as" or "[b]efore"]).  Accordingly, an affirmative defense that Defendant was permitted to withhold the amount of money in question as a set-off is incompatible with the plain language of the Consortium Agreement.[5]

The result might be different had Defendant in January of 2019 either placed the amount in question in the possession of a third-party or instructed CCC to suspend payment while Defendant resolved the question of responsibility by agreement with Plaintiff or obtained a final disposition of the dispute by a court located in the state of New York.  Thereafter, had Plaintiff nonetheless sued, Defendant could have posed this affirmative defense.[6]

---

[5]      Indeed, the affirmative defense of set-off does not even appear to be plausibly suggested by the factual allegations of Defendant's Answer. As defined earlier, a set-off is essentially a party's right to reduce a debt it owes by a debt it is owed. Here, in its Answer, Defendant does not admit that it owes Plaintiff any debt (but rather, again, alleges that the amount of money in question constitutes not Plaintiff's share of the Retainage but the termination charge owed by CCC to Defendant).

[6]      The Court notes that it has difficulty discerning what unfair prejudice will befall Defendant in depriving it of this affirmative defense. This is because, regardless of the remaining availability of the affirmative defense of estoppel, it appears that the facts on which Defendant seeks to rely (in asserting the affirmative defense of set-off) may still be relied on by Defendant in opposing Plaintiff's establishment of all of its claims. For example, Defendant can still argue that there was no breach of contract, promissory estoppel, unjust enrichment or fraud, because the amount of money sought by Plaintiff either (1) has in fact been paid to Plaintiff in the form

14

For all of these reasons, the Court finds that Defendant's affirmative defense of set-off must be stricken.

## B.   Whether Defendant's Counterclaim for Set-Off Should Be Dismissed

After carefully considering the matter, the Court answers this question in the negative.

The Court begins by observing that its analysis regarding Defendant's affirmative defense of set-off need not, and does not, apply to Defendant's counterclaim of set-off. This is because, as a general matter, unlike an affirmative defense of set-off, success on a counterclaim of set-off would not preclude a finding of liability on the plaintiff's claims; rather, it would merely affect the damages on those claims. *See, e.g., BAC Home Loans Serv., L.P. v. Hall*, CA2009-10-135, 2010 WL 2891780, at *3 (Ohio Ct. App. 2010) (explaining the difference between an affirmative defense and counterclaim). Moreover, here, Article 9.5 of the EPC Contract does not preclude Defendant's counterclaim of set-off because the amount of money Defendant seeks on this counterclaim ($2,154,216.38) has not already been withheld by Defendant but is allegedly in Plaintiff's possession (as part of the $2,939,033.38 that Plaintiff has allegedly received to date on account of the Phenix project). (Dkt. No. 38, at 10.) As a result, as Defendant argues, disposition by a court located in New York State is a proper means of resolving the parties' dispute regarding this amount, pursuant to Article 9.5 of the EPC Contract.

Plaintiff argues that Defendant's counterclaim of set-off must be dismissed because it arises from the same contract (the Consortium Agreement) as does its own claims. However, even assuming Plaintiff's reading of Ohio law is correct, while Plaintiff's claims arise from

---

of overpayments for work never performed, or (2) is not actually owed to Plaintiff because it consists not of Plaintiff's remaining share of the Retainage but of the share of the Termination Settlement owed to Defendant.

Defendant's alleged breach of the Consortium Agreement, Defendant's counterclaim of set-off is based not merely on Plaintiff's alleged breach of Article 5.9 of the Consortium Agreement but also (and more properly) on its alleged breach of Section 16.2 of the EPC Contract.  (Dkt. No. 38, at 9, 12, 13.)  Of course, whether Defendant has alleged facts plausibly suggesting a breach of Section 16.2 of the EPC Contract is another matter (addressed below in Part III.C. of this Decision and Order).  However, assuming Defendant has done so, its counterclaim of set-off survives Plaintiff's challenge (however redundant that counterclaim may be of Defendant's counterclaim of breach of contract).

For all of these reasons, the Court finds that Defendant's counterclaim of set-off survives Plaintiff's motion to dismiss.  Defendant's cross-motion to amend this counterclaim is denied as moot.

### C.     Whether Defendant's Counterclaim for Breach of Contract Should Be Dismissed

After carefully considering the matter, the Court answers this question in the negative.

"A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach."  *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E. 3d 458, 469 (Ohio 2018).

The factual allegations supporting Defendant's counterclaim of breach of contract are hardly a model of clarity.  They appear to allege that the $2,939,033.38 that Plaintiff has received thus far for the Phenix project (Dkt. No. 38, at 10) consists of the following four amounts: (1) $785,000.00 in the first Retainage payment from Defendant to Plaintiff, received in June (Dkt. No. 38, at 4, 13); (2) $294,327.59 in the second Retainage payment from Defendant

16

to Plaintiff, apparently received in August (Dkt. No. 38, at 13; cf. Dkt. No. 43-1, at 8); (3) $787,817.00 or less in a Termination Charge, apparently received in August (Dkt. No. 38, at 10); and (4) $1,071,888.79 or more in pre-postponement Milestone Payments, apparently received before 2019.  They also appear to allege that Plaintiff breached Article 5.9 of the Consortium Agreement[7] by improperly treating, between January and June of 2019 (when it filed this action), the sum of $2,154,216.38 (of the $2,939,033.38 that it has received for the Phenix project) as a combination of partial Retainage, pre-postponement Milestone Payments and a Termination Charge, instead of solely as a Termination Settlement (which may not be retained by a Consortium Member for costs, expenses and obligations that it never reasonably incurred).  (Dkt. No. 38, at 8-10, 13-14.)

The problem is that Defendant alleges that termination did not occur until August of 2019, a fact supported by CCC's termination letter of August 1, 2019.  (Dkt. No. 38, at 9; Dkt. No. 22-1.)  Even if Defendant were to rely on its factual allegation that it learned after payment of the Retainage in January of 2019 that CCC "intended" to terminate the Phenix project, conspicuously absent from Defendant's detailed Counterclaims (which have already been amended) is any factual allegation that, between January and June of 2019, Defendant communicated that intention to Plaintiff; and, more importantly, it is difficult to imagine how such an intention could somehow retroactively convert the Retainage and pre-postponement Milestone Payments into part of the Termination Settlement described in Article 5.9 of the Consortium Agreement.  (Dkt. No. 38, at 9.)  Finally, any allegation that the $2,154,216.38 in

---

[7]        Article 5.9 of the Consortium Agreement provides, in pertinent part, as follows: "[A]ny termination settlement paid by the CUSTOMER . . . shall be divided by the [Consortium] Members pro-rata to the costs, expenses, and obligations actually and reasonably incurred by each of them in the performance of its SCOPE OF WORK and recognized in arriving at the settlement with the CUSTOMER."  (Dkt. No. 1-1, at ¶ 5.9.)

question does not actually contain any Retainage appears to conflict Defendant's admission that Plaintiff's portion of the Retainage is approximately $3,233,543.63 (but for the termination). (Dkt. No. 38, at 3.)

Fortunately for Defendant, it also relies on Section 16.2 of the EPC Contract, which provides, in pertinent part, as follows: "In the event CCC terminates [the] contract without cause, Contractor shall be entitled to compensation . . . only for the Work performed by Contractor up to and including the date of termination with respect to the terminated Work or Work Amendments." (Dkt. No. 1-2, at ¶ 16.2.)  Although it appears possible that an ambiguity in Section 16.2 might be identified (and evidence adduced that it was intended to apply only to post-termination payments), Plaintiff has not made this argument; furthermore, the Court is cognizant of its obligations under Fed. R. Civ. P. 8(e) to liberally construe all pleadings, and its obligations under Fed. R. Civ. P. 12(b)(6) to draw all reasonable inferences in favor of the non-moving party.

As a result, the Court finds that Defendant has plausibly alleged (albeit barely) that Plaintiff has breached its obligation under Section 16.2 of the EPC Contract to not retain compensation from CCC in the amount of $2,154,216.38 for work that it never performed before the date of termination, causing Defendant to be underpaid in that amount.  (Dkt. No. 38, at 9-10, 13-14.)

The Court acknowledges that Plaintiff has argued that the EPC Contract contains no binding obligations between it and Defendant.  "It is well established that a contract is binding only upon the parties to the contract and those in privity with them and that an action for breach of contract can only be maintained by the parties to the contract or those deriving rights from the contracting parties."  *Am. Rock Mechs. Inc. v. Thermex Energy Corp.*, 608 N.E. 2d 830, 833

18

(Ohio Ct. App. 1992) (citing *Ohio Sav. Bank v. H.L. Vokes Co.*, 560 N.E. 2d 1328 [Ohio Ct. App. 1989]).  Here, Plaintiff and Defendant make up the consortium at issue, which is clearly articulated in the EPC Contract.  (Dkt. No. 1-2, at 3.)  In particular, the express language of the EPC Contract defines both Plaintiff and Defendant as "Parties" to the contract.  (*Id.*)  As a result, the Court finds that the EPC Contract is binding between Plaintiff and Defendant as parties.

As to whether Section 16.2 of the EPC Contract creates any enforceable rights between Plaintiff and Defendant, as stated above, that section provides that, "[i]n the event CCC terminates [the] contract without cause, Contractor shall be entitled to compensation . . . only for the Work performed by Contractor up to and including the date of termination with respect to the terminated Work or Work Amendments."  Moreover, Section 19.5 of the EPC Contract provides that Plaintiff and Defendant are "liable, jointly and severally, for the timely and complete performance of all obligations of [Plaintiff and Defendant as Contractor] imposed by this Contract."  (*Id.*)  As a result, it is plausible that Defendant has a right, upon termination of the contract by CCC without cause, to receive compensation for work performed by it that is being withheld by CCC because it has been wrongfully claimed and retained by Plaintiff.

For all of these reasons, Defendant's counterclaim of breach of contract survives Plaintiff's motion to dismiss.  The Court expresses no opinion regarding whether either count of the counterclaim, both of which teeter on Plaintiff's alleged breach of Section 16.2 of the EPC Contract, would survive a properly filed motion for summary judgment.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion to strike Defendant's affirmative defense of set-off (Dkt. No. 33) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion to dismiss Defendant's counterclaim of set-off and

breach of contract (Dkt. No. 43) is **DENIED**.

Dated: May 28, 2020
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge